Filing # 96154163 E-Filed 09/23/2019 04:39:20 PM

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR DUVAL COUNTY, FLORIDA

BRUCE BERNSTEIN

   Plaintiff,

v.                CASE NO.:
                DIVISION:

ASBURY AUTOMOTIVE GROUP, INC.,
CN MOTORS L.L.C. d/b/a COGGIN NISSAN,
and FLORIDA AUTOMOTIVE SERVICES L.L.C.

   Defendants.
_____/

## COMPLAINT

  COMES NOW, Plaintiff Bruce Bernstein ("Plaintiff" or "Mr. Bernstein") by and through the undersigned counsel, and by way of this Complaint against the Defendant Asbury Automotive Group, Inc. ("Asbury"), Defendant CN Motors L.L.C. d/b/a Coggin Nissan ("Coggin"), and Defendant Florida Automotive Services L.L.C. ("FAS") (collectively, "Defendants"), and alleges as follows:

### JURISDICTION AND PARTIES

  1. This is an action for damages which exceed the sum of $15,000.00, exclusive of interest, attorney's fees and costs.

  2. Mr. Bernstein is an adult male residing in Duval County, Florida.

  3. Defendant Asbury is a foreign profit corporation, with its headquarters and principal place of business in Duluth, Georgia. Defendant Asbury does business throughout the

State of Florida, including Duval County.

4. Defendant Coggin is a foreign limited liability company, with its headquarters and principal place of business in Duluth, Georgia. Defendant Coggin does business throughout the State of Florida, including Duval County.

5. Defendant FAS is a foreign limited liability company, with its headquarters and principal place of business in Duluth, Georgia. Defendant FAS does business throughout the State of Florida, including Duval County.

6. At all times relevant herein, Defendants were Mr. Bernstein's employer as a single integrated enterprise by: (1) having interrelation of operations; (2) having centralized control of labor relations; (3) having common management; and (4) having common ownership and financial control.

7. At all times relevant herein, Defendants had an interrelationship of operations where Defendants shared employees and resources to handle management, accounting, employee hiring and firing decisions, employee pay and benefits, employee management, operations, and administrative functions for each company.

8. At all time relevant herein, Defendants maintained centralized control of labor relations as Defendant Asbury held authority and control over employee hiring and firing decisions, employee promotions, employee position assignments and titles, employee pay issues, employee benefit plans, and employee policies and procedures.

9. At all times relevant herein, Defendants maintained common management as Defendant Asbury identifies its officers with the Florida Department of State as David Hult (P), Sean Goodman (SVP/CFO), John Hartman (SVP/O), Jed Milstein (SVP/CHRO, George

Villasana (SVP/GC/S), and Matthew Pettoni (VP/T). Defendant Coggin also identifies its officers as David Hult (P/CEO), Matthew Mees (VP), George Villasana (S), Matthew Pettoni (T), John Hartman (VP), and Sean Goodman (CFO). Defendant FAS also identifies its officers as David Hult (P/CEO), Matthew Mees (VP), George Villasana (S), Matthew Pettoni (T), John Hartman (VP), and Sean Goodman (CFO).

10. At all times relevant herein, Defendants maintained common ownership and financial control as Defendant Asbury is the parent company of Defendant Coggin and Defendant FAS and assumes control of the assets and liabilities of both entities.

11. Alternatively, Defendants are joint employers because:

(a) There was an arrangement between Defendants to share employees' services or to interchange employees;

(b) Defendants acted directly or indirectly in the interest of the other in relation to employees; and/or

(c) Defendants were not completely disassociated with respect to employees' employment and may be deemed to share control of employees, either directly or indirectly, because one employer controlled, was controlled by, or was under common control with the other.

12. Defendants shared or co-determined matters governing the essential terms and conditions of their employees, including Mr. Bernstein's employment and such sharing or co-determining of control over such employees was either actual, or Defendants retained the authority or power to control them.

13. Among the matters shared or co-determined by Defendants governing the

essential terms and conditions of their employees', including Mr. Bernstein's employment are, but are not limited to:

    (a)    the power or ability to hire and fire;

    (b)    the power or ability to supervise;

    (c)    the power or ability to determine the method and/or rate of employee compensation;

    (d)    the maintenance of employee records; and/or

    (e)    the power or ability to assess, grant, deny, or otherwise affect employees' benefits.

14. Defendants employ more than 500 employees nationwide.

15. Venue is proper in Duval County, Florida pursuant to Florida Statutes § 47.011 due to the causes of action alleged herein accruing in Duval County.

**PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES**

16. Mr. Bernstein has timely complied with all legally required administrative prerequisites prior to initiating this action.

17. Specifically, Mr. Bernstein timely filed his charges of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about April 19, 2018.

18. Pursuant to a work-share agreement between the EEOC and the Florida Commission on Human Relations ("FCHR"), Mr. Bernstein's charges of age discrimination and retaliation were also timely filed with the FCHR, on or about April 19, 2018.

19. More than 180 days have elapsed since Mr. Bernstein's charges were filed with

the FCHR without a determination by the FCHR, and thus Mr. Bernstien may bring suit under the Florida Civil Rights Act ("FCRA") pursuant to Fla. Stat. § 760.11.

20. Mr. Bernstein received a Notice of Right to Sue from the EEOC on or about July 23, 2019.

21. Mr. Bernstein has timely filed this action within 90 days of receipt of the EEOC Notice of Right to Sue.

22. All conditions precedent to bringing this action have been satisfied, waived or excused.

23. This Complaint is timely filed.

## FACTS GIVING RISE TO RELIEF

24. Mr. Bernstein was employed by Defendants in their Coggin Nissan on Atlantic store in Jacksonville, Florida from approximately December 3, 1996 to June 29, 2017.

25. Mr. Bernstein is an adult male, and is 66 years old. Mr. Bernstein was 64 years old at the time of his termination from Defendants.

26. At all time relevant herein, Mr. Bernstein's supervisors were aware of Mr. Bernstein's age.

27. Mr. Bernstein's position at the time of his termination was Parts Manager.

28. At all times relevant herein, Mr. Bernstein performed his duties in a highly competent and satisfactory manner.

29. In the years leading up to Mr. Bernstein's termination, changes began to occur in Defendants' Jacksonville and Florida management where older managers and employees were either being terminated or encouraged to resign, and replaced with younger managers and

employees.

30. In or around January 2016, Mr. Bernstein was subjected to a reduction in his commission-based compensation plan by approximately 25 percent.

31. At the time of this pay reduction, the General Manager of Defendants' Coggin Nissan on Atlantic store was Joseph Koziel, who was believed to be 37 years old at the time, and was involved in the decision to reduce Mr. Bernstein's rate of pay.

32. Koziel had recently hired Jason Baughman to assume the Service Manager position of the Coggin Nissan on Atlantic store, who was also substantially younger than Mr. Bernstein and believed to be 37 years old at that time as well.

33. At the time of Mr. Bernstein's pay reduction, Baughman contemporaneously received a pay increase that mirrored the amount of Mr. Bernstein's reduced compensation plan. It is believed that Koziel was also involved in the decision to increase Baughman's rate of pay.

34. Mr. Bernstein notified other managers within his chain of supervision of what he perceived to be an unwarranted and unfair pay reduction, but Mr. Bernstein's compensation plan continued at the reduced rate.

35. Mr. Bernstein's reduced compensation plan was continuing in nature, and was paid on a periodic basis at the same rate until his termination.

36. In or around June 2016, a female employee of Defendants' parts department who had recently been terminated, notified Mr. Bernstein that Baughman had made unwelcome sexual advances toward her, and that Baughman had been terminated and banned from another dealership for sexually harassing female employees there as well.

37. Upon receiving this information, Mr. Bernstein notified Regional Manager, and

one of Mr. Bernstein's supervisors, Jim Lux of the sexual harassment allegations regarding Baughman.

38. Thereafter, Mr. Bernstein was contacted by a human resources representative, Della Boyea who notified Mr. Bernstein that an investigation of the sexual harassment allegations regarding Baughman had been initiated.

39. Mr. Bernstein was subsequently confronted by Koziel about the Baughman sexual harassment allegations. Koziel proceeded to chastize Mr. Bernstein for bringing the sexual harassment allegations to light, and expressed displeasure for Mr. Bernstein's involvement in assisting the harassed employee in notifying Defendants' human resources department of the sexual harassment allegations regarding Baughman.

40. On or about June 13, 2017, a town hall meeting which was attended by several senior executive officials for Defendants, including Defendants' President and CEO, David Hult, as well as a number of Defendants' managers from stores in the local area. At the town hall meeting, Mr. Bernstein addressed the entire audience in attendance and among other things, expressed his belief that older management employees of Defendants were being mistreated and that some of them had been forced out of the company. Mr. Lux also attended this town hall meeting.

41. At the conclusion of the town hall meeting, Mr. Hult met with Mr. Bernstein and asked Mr. Bernstein if he was planning on retiring any time soon. Mr. Bernstein responded that it would be up to Mr. Hult as to whether Mr. Bernstein retired.

42. On or about June 29, 2017, Defendants suddenly and unexpectedly terminated Mr. Bernstein's employment.

43. At the time of Mr. Bernstein's termination, Lux approached Mr. Bernstein and stated that he accepted Mr. Bernstein's resignation, and for Mr. Bernstein to turn give his keys to the Service Manager, Jim Jernigan, say his goodbyes, and to leave the store. However, at no time did Mr. Bernstein inform Lux or any other employees of Defendants that he was resigning, or that he intended to resign.

44. After Mr. Bernstein's termination, he was replaced by a substantially younger employee, Michael Peinsipp, who is believed to be 42 years old at the time of replacing Mr. Bernstein.

45. Since Mr. Bernstein's termination, it is believed that other older managers for Defendants have similarly been terminated, or encouraged to resign because of their age, and replaced by substantially younger employees.

46. Mr. Bernstein has suffered, and continues to suffer damages as a result of Defendants' wrongful acts and omissions.

47. Mr. Bernstein has retained the undersigned law firm to prosecute this action and has agreed to pay said law firm a reasonable fee for its services.

### COUNT I

**(Violation of the Age Discrimination in Employment Act of 1967,
as amended 29 U.S.C. § 621, *et seq.* ("ADEA"))**

48. Mr. Bernstein restates and realleges each and every factual allegation contained in paragraphs 1 through 35, and 40 through 47 of this Complaint with the same force and vigor as if set out here in full.

49. Defendants, by and through their agents and employees, intentionally

discriminated against Mr. Bernstein by terminating his employment because of his age in violation of the ADEA.

50. Mr. Bernstein is a member of a protected class under the ADEA as he is over 40 years of age.

51. Mr. Bernstein was qualified for his position as Parts Manager.

52. Mr. Bernstein was subjected to adverse employment action when his employment was terminated because of his age.

53. A substantially younger person or persons filled the position from which Mr. Bernstein was terminated.

54. Even if Mr. Bernstein's termination is determined to be a position elimination, there is sufficient evidence that Defendants intended to discriminate against Mr. Bernstein in making their employment decision.

55. The facts and circumstances of the discriminatory treatment of Mr. Bernstein, and his termination of employment by Defendants, also establish a convincing mosaic of evidence that Defendants, by and through their agents and employees, intentionally discrimination against Mr. Bernstein because of his age in violation of the ADEA.

56. The acts and omissions committed by Defendant, by and through its agents and employees, were willful and Defendant knew or showed reckless disregard for whether its conduct was prohibited by the ADEA.

57. As a direct and proximate result of Defendants' unlawful discrimination, by and through its agents and employees, Mr. Bernstein has suffered and will continue to suffer damages including but not limited to: lost wages in the form of lost back pay and lost front pay, loss of

earning capacity, and loss of benefits and entitlements.

WHEREFORE, Plaintiff Bruce Bernstein demands judgment against Defendants for damages and equitable relief including but not limited to: lost back pay, lost front pay, lost benefits and entitlements, loss of earning capacity, and any other lost economic damages; liquidated damages; reinstatement; attorney's fees and costs under the ADEA; prejudgment and post-judgment interest; and such other relief as the Court deems just and proper under the circumstances.

## COUNT II

### (Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.01 *et seq.* ("FCRA")- Age Discrimination)

58. Mr. Bernstein restates and realleges each and every factual allegation contained in paragraphs 1 through 35, and 40 through 47 of this Complaint with the same force and vigor as if set out here in full.

59. Defendants, by and through their agents and employees, intentionally discriminated against Mr. Bernstein by terminating his employment because of his age in violation of the FCRA.

60. Mr. Bernstein is a member of a protected class under the FCRA.

61. Mr. Bernstein was qualified for his position as Parts Manager.

62. Mr. Bernstein was subjected to adverse employment action when his employment was terminated because of his age.

63. A substantially younger person or persons filled the position from which Mr. Bernstein was terminated.

64. Even if Mr. Bernstein's termination is determined to be a position elimination, there is sufficient evidence that Defendants intended to discriminate against Mr. Bernstein in making their employment decision.

65. The facts and circumstances of the discriminatory treatment of Mr. Bernstein, and his termination of employment by Defendants, also establish a convincing mosaic of evidence that Defendants, by and through their agents and employees, intentionally discrimination against Mr. Bernstein because of his age in violation of the FCRA.

66. The acts and omissions committed by Defendants were wilful, malicious, and in reckless disregard of Mr. Bernstein's rights.

67. As a direct and proximate result of actions committed by Defendants, Mr. Bernstein has suffered and will continue to suffer lost wages, loss of earning capacity, loss of benefits and entitlements, damage to his career and reputation, personal humiliation, emotional distress, mental anguish and loss of enjoyment of life.

WHEREFORE, Plaintiff Bruce Bernstein demands judgment against Defendants for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, lost earning capacity and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, and loss of enjoyment of life; punitive damages; reinstatement; attorney's fees and costs under the FCRA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT III

**(Violation of the Age Discrimination in Employment Act of 1967,
as amended 29 U.S.C. § 621, *et seq.*-Retaliation)**

68.     Mr. Bernstein restates and realleges each and every factual allegation contained in paragraphs 1 through 35, and 40 through 47 of this Complaint with the same force and vigor as if set out here in full.

69.     Defendants, by and through their agents and employees, unlawfully retaliated against Mr. Bernstein in violation of the ADEA because Mr. Bernstein complained about, and objected to age discrimination in the workplace.

70.     Mr. Bernstein's protected activity was pursuant to his objective and subjective good faith belief that he and other employees of Defendants were being subjected to age discrimination in the workplace.

71.     Defendants, by and through their agents and employees, took adverse employment actions and unlawfully retaliated against Mr. Bernstein in violation of the ADEA by, among other things, terminating Mr. Bernstein's employment with Defendants.

72.     Defendants' adverse employment actions were causally related to Mr. Bernstein's protected activity.

73.     Any non-retaliatory reason proffered by Defendants for taking such adverse employment actions against Mr. Bernstein is pretext for unlawful retaliation.

74.     The acts and omissions committed by Defendants, by and through their agents and employees, were willful and Defendants knew or showed reckless disregard for whether their conduct was prohibited by the ADEA.

75. As a direct and proximate result of Defendants' unlawful discrimination, by and through their agents and employees, Mr. Bernstein has suffered and will continue to suffer damages including but not limited to: lost wages in the form of lost back pay and lost front pay, lost earning capacity, and lost benefits and entitlements.

WHEREFORE, Plaintiff Bruce Bernstein demands judgment against Defendants for damages and equitable relief including but not limited to: lost back pay, lost front pay, lost earning capacity, lost benefits and entitlements, and any other lost economic damages; liquidated damages; reinstatement; attorney's fees and costs under the ADEA; prejudgment and post-judgment interest; and such other relief as the Court deems just and proper under the circumstances.

## COUNT IV

### (Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.01 *et seq.*- Age Discrimination Retaliation)

76. Mr. Bernstein restates and realleges each and every factual allegation contained in paragraphs 1 through 35, and 40 through 47 of this Complaint with the same force and vigor as if set out here in full.

77. Defendants, by and through their agents and employees, unlawfully retaliated against Mr. Bernstein in violation of the FCRA because Mr. Bernstein complained about, and objected to age discrimination in the workplace.

78. Mr. Bernstein's protected activity was pursuant to his objective and subjective good faith belief that he and other employees of Defendants were being subjected to age discrimination in the workplace.

79. Defendants, by and through their agents and employees, took adverse employment actions and unlawfully retaliated against Mr. Bernstein in violation of the FCRA by, among other things, terminating Mr. Bernstein's employment with Defendants.

80. Defendants' adverse employment actions were causally related to Mr. Bernstein's protected activity.

81. Any non-retaliatory reason proffered by Defendants for taking such adverse employment actions against Mr. Bernstein is pretext for unlawful retaliation.

82. The acts and omissions committed by Defendants were wilful, malicious, and in reckless disregard of Mr. Bernstein's rights.

83. As a direct and proximate result of actions committed by Defendants, Mr. Bernstein has suffered and will continue to suffer lost wages, loss of earning capacity, loss of benefits and entitlements, damage to his career and reputation, personal humiliation, emotional distress, mental anguish and loss of enjoyment of life.

WHEREFORE, Plaintiff Bruce Bernstein demands judgment against Defendants for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, lost earning capacity and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, and loss of enjoyment of life; punitive damages; reinstatement; attorney's fees and costs under the FCRA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT V

**(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII")-Gender Retaliation)**

84. Mr. Bernstein restates and realleges each and every factual allegation contained in paragraphs 1 through 28, 36 through 39, 42 through 43, and 46 through 47 of this Complaint with the same force and vigor as if set out here in full.

85. Defendants, by and through their agents and employees, unlawfully retaliated against Mr. Bernstein in violation of Title VII because Mr. Bernstein complained about, and objected to gender discrimination in the workplace.

86. Mr. Bernstein's protected activity was pursuant to his objective and subjective good faith belief that other employees of Defendants were being subjected to gender discrimination in the workplace.

87. Defendants, by and through their agents and employees, took adverse employment actions and unlawfully retaliated against Mr. Bernstein in violation of Title VII by, among other things, terminating Mr. Bernstein's employment with Defendants.

88. Defendants' adverse employment actions were causally related to Mr. Bernstein's protected activity.

89. Any non-retaliatory reason proffered by Defendants for taking such adverse employment actions against Mr. Bernstein is pretext for unlawful retaliation.

90. The acts and omissions committed by Defendants, by and through their agents and employees, were willful, malicious, and in reckless disregard of Mr. Bernstein's federally protected rights.

91.     As a direct and proximate result of actions by Defendants, by and through their agents and employees, Mr. Bernstein has suffered and continues to suffer damages including lost back pay, lost front pay, loss of earning capacity, lost benefits and entitlements, mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

WHEREFORE, Plaintiff, Bruce Bernstein demands judgment against Defendants for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, and loss of enjoyment of life; punitive damages; attorney's fees and costs under Title VII; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT VI

### (Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.01 *et seq.* ("FCRA")-Gender Retaliation)

92.     Mr. Bernstein restates and realleges each and every factual allegation contained in paragraphs 1 through 28, 36 through 39, 42 through 43, and 46 through 47 of this Complaint with the same force and vigor as if set out here in full.

93.     Defendants, by and through their agents and employees, unlawfully retaliated against Mr. Bernstein in violation of the FCRA because Mr. Bernstein complained about, and objected to gender discrimination in the workplace.

94.     Mr. Bernstein's protected activity was pursuant to his objective and subjective good faith belief that other employees of Defendants were being subjected to gender

16

discrimination in the workplace.

95. Defendants, by and through their agents and employees, took adverse employment actions and unlawfully retaliated against Mr. Bernstein in violation of the FCRA by, among other things, terminating Mr. Bernstein's employment with Defendants.

96. Defendants' adverse employment actions were causally related to Mr. Bernstein's protected activity.

97. Any non-retaliatory reason proffered by Defendants for taking such adverse employment actions against Mr. Bernstein is pretext for unlawful retaliation.

98. The acts and omissions committed by Defendants were willful, wanton, malicious, and in reckless disregard of Mr. Bernstein's rights.

99. As a direct and proximate result of actions by Defendants, by and through their agents and employees, Mr. Bernstein has suffered and continues to suffer damages including lost back pay, lost front pay, loss of earning capacity, lost benefits and entitlements, mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

WHEREFORE, Plaintiff Bruce Bernstein demands judgment against Defendants for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, and loss of enjoyment of life; punitive damages; attorney's fees and costs under the FCRA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## **JURY TRIAL DEMAND**

Plaintiff Bruce Bernstein requests a jury trial on all issues so triable.

Dated this 23rd day of September, 2019.

                                      Respectfully submitted,

                                      The Law Office of Shands M. Wulbern, P.A.

                                      /s/ Shands M. Wulbern
                                      Shands M. Wulbern
                                      Florida Bar No. 0155217
                                      3063 Hartley Road, Suite 5
                                      Jacksonville, Florida 32257
                                      (904) 570-9233
                                      swulbern@wulbernlaw.com

                                      *Trial Counsel for Plaintiff*