# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

BRUCE BERNSTEIN,

        Plaintiff,

v.                                                   Case No. 3:19-cv-1175-BJD-JRK

ASBURY AUTOMOTIVE GROUP,
INC., et al.,

        Defendants.
_____

# O R D E R

## I.   Status/Background

This cause is before the Court on Plaintiff's Second Motion to Compel Discovery from Defendants and Incorporated Memorandum of Law (Doc. No. 21; "Motion"), filed December 10, 2020. Defendants responded in opposition to the Motion on December 23, 2020. See Defendants' Response to Plaintiff's Second Motion to Compel (Doc. No. 22; "Response").

Plaintiff is suing Defendants Asbury Automotive Group, Inc.; CN Motors, LLC d/b/a Coggin Nissan; and Florida Automotive Services, LLC, alleging all were his "employer" by acting "as a single integrated enterprise," or alternatively, that all Defendants were "joint employers." Compl. (Doc. No. 4),

filed in this Court on October 16, 2019,[1] at 2, 3. Plaintiff alleges he was employed by Defendants from approximately December 3, 1996 through June 29, 2017, when his employment was terminated. Id. at 5. At the time of his termination, Plaintiff was a "Parts Manager" and was 64 years old. Id. According to Plaintiff, Jim Lux was a "Regional Manager" for Defendants and one of Plaintiff's supervisors. Id. at 6-7. Plaintiff alleges Mr. Lux was involved in or responsible for Plaintiff's "unlawful termination." Id. at 7-8; Motion at 3-4.

Plaintiff brings claims for "Violation of the Age Discrimination in Employment Act of 1967, as amended," 29 U.S.C. §§ 621, et seq. ("ADEA") (count I); "Violation of the Florida Civil Rights Act," Fla. Stat. §§ 760.01, et seq. ("FCRA") (count II); "Violation of the [ADEA] . . . [for] Retaliation" (count III); "Violation of the [FCRA] . . . [for] Retaliation" (count IV); "Violation of Title VII of the Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq. for "Gender Retaliation" (count V); and "Violation of the [FCRA]" for "Gender Retaliation" (count VI) (emphasis omitted).

In their Answer, Defendants raise several affirmative defenses, including that all employment related decisions regarding Plaintiff "were made in good faith, and for legitimate, non-discriminatory and non-retaliatory reasons" and

---

[1] The case was originally brought in state court on September 23, 2019. It was removed to this Court on October 16, 2019. See Notice of Removal (Doc. No. 1).

- 2 -

that "Plaintiff's age was not the but for cause of any alleged adverse employment actions." Answer (Doc. No. 5), filed October 23, 2019, at 9, 11 (emphasis omitted).[2] In their Response, Defendants allege that their "legitimate non-discriminatory reason for the separation of Plaintiff's employment is that Plaintiff resigned because he disagreed with Mr. Lux's position that the structure of the Parts Department needed to change." Response at 4. Defendants further assert that "[i]nstead of working with Mr. Lux to implement the changes, Plaintiff chose to leave." Id. According to Defendants, the "changes" were "needed and urgent staff reductions to the Parts Department." Motion at 3; Response at 3.

## II.   Discussion

In the Motion, Plaintiff asks the Court to overrule Defendants' objections to his Second Request for Production, specifically Requests Nos. 1-3, and enter an Order compelling Defendants to provide full and complete responses to these same requests. Motion at 9. Plaintiff further petitions the Court to "[o]rder Defendants[] to produce CEO David Hult for deposition." Id. Finally, Plaintiff seeks attorney's fees and costs incurred in bringing the Motion. Id.

---

[2] For ease of reference, citations to Defendants' Answer follow the pagination assigned by the Court's electronic filing system (CM/ECF).

### A. The Requests to Produce

Plaintiff's Second Request for Production (Nos. 1-3) seeks employment data and financial information regarding the Parts Department where Plaintiff worked as Parts Manager. Id. at 4. Specifically, Request to Produce No. 1 seeks "all documents reflecting standard pay reports of [P]arts [D]epartment employees . . . for all pay periods from June 1, 2016 through September 30, 2018." Id. Request to Produce No. 2 seeks "all documents reflecting any rosters or lists of [P]arts [D]epartment employees . . . during the periods of June 1, 2016 through September 30, 2018." Id. Request to Produce No. 3 seeks "all documents reflecting sales, profit, expenses, and income information for the [P]arts [D]epartment . . . for the years of 2016 through 2018." Id. at 5. Plaintiff argues that these requested documents are "significant to refute Mr. Lux's version of why he alleges that Plaintiff resigned." Id. at 4.

Defendants responded to the Requests to Produce, objecting that Request Nos. 1, 2, and 3 were "overbroad as to time, not relevant to Plaintiff's claims or Defendants' defenses, and [are] not proportional to the needs of the case." Id. at 4-5. Plaintiff argues these objections are "merely boilerplate objections, and provide no specificity or particularity in the reasoning for the stated objections." Id. at 5.

Upon due consideration of the parties' arguments and the relevant factors under the Federal Rules of Civil Procedure ("Rule(s)"), the undersigned finds

that Defendants have not properly objected to the Requests to Produce Nos. 1, 2, and 3. Rule 34(b)(2)(B) sets out clear guidelines when making objections. Rule 34 states that when objecting to an item or category, the party must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "As made clear by the 2015 amendments to the [Rules], the use of boilerplate objections is improper[, and Rule] 34(b)(2)(B) now requires that the responding party 'state with specificity the grounds for objection to the request, including the reasons.'" Archer v. City of Winter Haven, No. 8:16-CV-3067-CEH-AAS, 2017 WL 5158142, at *2 (M.D. Fla. Nov. 7, 2017) (unpublished) (citation omitted).

As mentioned above, Defendants responded to Request Nos. 1, 2, and 3 by objecting on the grounds that these requests were vague and/or overbroad as to time, not relevant to Plaintiff's claims or Defendants' defenses, and not proportional to the needs of the case. Motion at 4-5. These objections offered no specificity as required by Rule 34(b)(2)(B) as to which portions of the Requests were vague, overbroad, irrelevant, and/or not proportional to the needs of the case. See Fed. R. Civ. P. 34(b)(2)(B).

Further, Defendants objected that Request No. 3 (seeking financial information for the Parts Department) sought confidential and proprietary information. Motion at 5. However, as Plaintiff observes, Defendants have already produced some of the records requested, but only for a limited scope of

time. Id. at 7. Therefore, the undersigned finds the objection to Request No. 3, that it seeks confidential and proprietary information, is unavailing.

In addition, the information sought in Request Nos. 1, 2, and 3 is relevant and proportional under Rule 26. Rule 26 states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. A district court has broad discretion to compel or deny discovery. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011). Upon consideration of the parties' arguments and the relevant factors under Rule 26(b)(1), the undersigned finds that the documents sought by Plaintiff are relevant to Plaintiff's claims and Defendants' defenses, and proportional to the needs of the case.

Plaintiff states that Mr. Lux's and Michael Peinsipp's (Plaintiff's replacement in the Parts Department) deposition testimony differs as to when the allegedly "needed and urgent staff reductions" were made to the Parts Department after Plaintiff's departure, with the difference being 30-45 days

(Mr. Lux) and 7-9 months (Mr. Peinsipp). Motion at 4; see also Motion at Exs. A (Doc. No. 21-1) (Deposition of James Lux via Zoom; "Lux Deposition") at 11; B (Doc. No. 21-2) (Deposition of Michael A. Peinsipp via Zoom; "Peinsipp Deposition") at 4.[3] Because of this difference in deposition testimony, Plaintiff seeks information regarding the Parts Department for the time periods before and after he worked for Defendants. Motion at 3-4. The documents sought in Request No. 1 (pay reports); Request No. 2 (employee rosters/lists); and Request No. 3 (financial information for the Parts Department) are relevant to the contrasting deposition testimony of when the "needed and urgent staff reductions" were made to the Parts Department. The undersigned therefore finds the requested documents are relevant to Plaintiff's claims (whether he was allegedly fired due to his age) and Defendants' defense (that Plaintiff allegedly resigned because he did not want to make structural changes to his department).

As to proportionality, Defendants argue that "[r]equiring Defendants to produce 27 months of financial data and rosters, when Plaintiff [allegedly] has the relevant documents in his possession" is not proportional to the needs of the case. Response at 8. Plaintiff is only seeking information about the Parts Department, the department he worked in before his alleged termination. The

---

[3] For ease of reference, citations to Exhibits A (Lux Deposition) and B (Peinsipp Deposition) follow the pagination assigned by the Court's electronic filing system (CM/ECF).

- 7 -

records sought are fairly limited to a narrow scope of time (27 months) and narrowly construed to pertain to documentation and information about the Parts Department. The undersigned finds the documents requested by Plaintiff are proportional to the needs of the case.

Based on the foregoing, the Motion is due to be granted as to Requests to Produce 1, 2, and 3.

## B.    The Deposition of David Hult

Plaintiff also asks this Court to compel the deposition of Asbury CEO, Mr. Hult. Motion at 7-9.[4] Plaintiff alleges he had direct communication with Mr. Hult at a town hall meeting two weeks prior to his alleged termination. Id. at 7-8.[5] During this town hall meeting, Plaintiff spoke up regarding his perception that "certain employees and long-tenured managers felt they were being forced

---

[4]    Defendants allege that Plaintiff requested to depose Mr. Hult, for the first time, after the parties failed to resolve this matter in mediation. Response at 8; see also Motion at 2. The parties have been unable to reach an agreement as to whether Plaintiff can depose Mr. Hult. Plaintiff therefore moved to compel the deposition by filing the present Motion. Procedurally, whether a CEO can be deposed is typically raised in a Motion for Protective Order. See Chick-Fil-A, Inc. v. CFT Dev., LLC, No. 5:07-CV-501-WTH-GRJ, 2009 WL 928226, at *n.1 (M.D. Fla. Apr. 3, 2009) (unpublished) (stating that "where . . . a party resists producing a [high-ranking executive employee] for deposition, the correct procedural mechanism is to file a motion for protective order, rather than refusing to produce the witness and thus forcing the party seeking to conduct the deposition to file a motion to compel"). The presentation of the issue, asking the Court to compel the deposition of Mr. Hult, does not affect the Court's ruling.

[5]    Since Mr. Hult attended several town hall meetings in 2017, it appears the town hall meeting was a chance for upper level management of Asbury to hear from employees about specific topics or issues at the employees' local store.

out of the company." Id. at 8.⁶ Plaintiff claims his retirement came up in conversation with Mr. Hult after Plaintiff "raised concerns" at the town hall meeting, and it was approximately two weeks later that Mr. Lux allegedly terminated Plaintiff. Id. Plaintiff emailed Mr. Hult on June 30, 2017 (the day after his alleged termination) and informed him that Mr. Lux allegedly terminated Plaintiff under the pretense of a resignation. See id.; see also Motion at Ex. E (Doc. No. 21-5) (emails from Plaintiff to Mr. Hult; "Emails"), at 2-3.⁷

Plaintiff intends to limit the scope of Mr. Hult's deposition to the following areas of inquiry: (1) Mr. Hult's knowledge of Plaintiff's alleged termination; (2) the town hall meeting prior to Plaintiff's alleged termination; (3) any communications Mr. Hult had with others regarding Plaintiff; (4) Mr. Hult's involvement with Mr. Lux's transfers; (5) Mr. Hult's and Mr. Lux's work history; and (6) Mr. Hult's knowledge of any other allegations of age discrimination and retaliation. Motion at 8.

Plaintiff asserts that he had communications, directly and electronically, with Mr. Hult before his alleged termination and that Mr. Lux spoke with Mr. Hult regarding Plaintiff's alleged termination. Id. at 7-8. Plaintiff further

---

⁶ Plaintiff's Complaint specifically states that at the town hall meeting, Plaintiff "expressed his belief that older management employees . . . were being mistreated and that some of them had been forced out of the company." Compl. at 7.

⁷ For ease of reference, citations to Exhibit E (emails) follow the pagination assigned by the Court's electronic filing system (CM/ECF).

argues that if he is not allowed to depose Mr. Hult, "there may be significant information that is not discovered regarding any involvement or knowledge Mr. Hult may have regarding Plaintiff's [alleged] termination." Id. at 8-9.

Responding, Defendants contend that Plaintiff has "not offered a proper basis or need to depose Mr. Hult . . . [and] this belated request appears specious and harassing." Response at 9. Defendants further argue that Mr. Hult was not personally involved in any disputes involving Plaintiff because these types of disputes (involving individual, non-senior managerial employees) are handled at the individual store level. Id. at 10. Defendants point out that three other employees have provided testimony surrounding the information Plaintiff seeks from Mr. Hult and that Mr. Lux has even filled in some "gaps" of the conversations he had with Mr. Hult. Id.

The parties agree that the "apex doctrine" applies to Mr. Hult. "Courts routinely recognize that it may be appropriate to limit or preclude depositions of high-ranking officials, often referred to as 'apex' depositions, because 'high[-]level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" Goines v. Lee Memorial Health System, No. 2:17-CV-656-JES-NPM, 2018 WL 3831169, at *4 (M.D. Fla. Aug. 13, 2018) (unpublished) (citations omitted).

A party seeking to depose a high-ranking official bears the burden of showing that official has (1) "'unique knowledge of the issues in the case' or [(2)]

- 10 -

the information sought has been pursued unsatisfactorily through less intrusive means." Id. (citations omitted); see also Dart Indus. v. Acor, No. 6:06-CV-1864-JA-DAB, 2008 WL 1995105, at *1 (M.D. Fla. May 7, 2008) (unpublished) (finding that the Secretary/Chief Legal Officer/Executive Vice-President having some knowledge of underlying facts of the case was not enough to override the protections of the apex doctrine).

Having considered the parties' arguments, the relevant factors under the apex doctrine, and for the reasons stated below, the undersigned finds that Mr. Hult is a high ranking official and that Plaintiff has failed to show that Mr. Hult has unique knowledge of Plaintiff's claims or that the information Plaintiff seeks has been pursued unsatisfactorily through less intrusive means.

Mr. Hult should be protected from deposition because he is a high-ranking official (CEO of Asbury) without personal or unique knowledge of the issues in this case. See Response at Ex. A (Doc. No. 22-1) (Declaration of David W. Hult; "Declaration") at 1-3. Mr. Hult is the CEO of a Fortune 500 company that oversees almost 8,000 employees. Response at 10; see also Declaration at 1. Mr. Hult, in his sworn Declaration, states that he is responsible for Asbury's "overall strategy and resources" and that "disputes involving individual non-senior managerial employees are addressed at the store level." Declaration at 1-2.

As to the first area (Mr. Hult's knowledge of Plaintiff's alleged termination) and third area (Mr. Hult's communication with others) about which Plaintiff wishes to inquire, Mr. Hult states he does not have any recollection of ever speaking to Plaintiff and was not involved in any decisions regarding Plaintiff's employment. Id. at 2. His sworn Declaration also iterates that he has no knowledge of the circumstances that resulted in Plaintiff no longer working for Asbury. Id.

Plaintiff admits Mr. Hult did not respond to his email, sent the day after his alleged termination, that outlined various complaints against Mr. Lux and the details surrounding his alleged termination. Motion at 8. Mr. Hult's failure to respond to this email supports Mr. Hult's Declaration that he does not recall receiving or reviewing any emails sent by Plaintiff and that he does not recall speaking with anyone regarding Plaintiff's email. Declaration at 2. The fact that Plaintiff sent correspondence to Mr. Hult does not alone show that Mr. Hult has any unique or personal knowledge surrounding Plaintiff's claims. See Moore v. Shands Jacksonville Med. Ctr., Inc., No. 3:09-CV-298-MMH-PDB, 2010 WL 11505066, at *2 (M.D. Fla. Oct. 29, 2010) (unpublished) (holding that the plaintiff has not demonstrated the defendant's CEO has unique knowledge of the circumstances that underlie the cause simply because the plaintiff sent the CEO correspondence). Given that Mr. Hult failed to respond to Plaintiff's email

and that Mr. Hult has no recollection of talking with Plaintiff, a deposition seems unlikely to produce new evidence.

Pertaining to the second area of inquiry (the town hall meeting), according to Defendants, Plaintiff has testimony from Ray Hernandez[8] and Mr. Peinsipp who were also in attendance at the town hall meeting. Response at 10. Plaintiff already deposed Mr. Lux who testified about his conversations with Mr. Hult after the town hall meeting. See Lux Deposition at 13-14. Mr. Hult's sworn Declaration states that while he does not deny talking with Plaintiff after the town hall meeting, he has no recollection of speaking with him. See Declaration at 2. Thus, deposing Mr. Hult about his conversation with Plaintiff after the town hall meeting seems unlikely to produce new information.

As to the fourth area of inquiry, Plaintiff wishes to depose Mr. Hult to question him about Mr. Lux's transfer to the Texas Market in 2018. Motion at 8. It is unclear from the Motion and Complaint how the Texas market is related to Plaintiff's claims, other than Plaintiff alleging that "Mr. Hult apparently discussed with Mr. Lux that it would be preferable to transfer Mr. Lux out of the Florida region to a Texas market." Id.[9]

---

[8] According to Defendants' Response, Mr. Hernandez was the former Regional Fixed Operations Manager for Defendants. Response at 10.

[9] The Motion does not establish the relevancy of the inquiry into Mr. Lux's transfer to the Texas Market. Plaintiff simply states that Mr. Hult allegedly told Mr. Lux it would be "preferable" for Mr. Lux to transfer to the Texas market. Motion at 8.

Even if relevant, Plaintiff has already deposed Mr. Lux and specifically asked him about his transfer to the Texas market. See Lux Deposition at 3-5; see also Response at 11. Mr. Lux testified that his transfer to Texas was an "internal decision" and that he was transferred because "[t]he stores in Texas needed some support." Lux Deposition at 3-4. Mr. Lux further stated that his transfer had nothing to do with the Florida market and that the Florida market was never brought up in connection with his transfer to Texas. Id. at 5.

Pertaining to the fifth area of inquiry, Plaintiff wishes to question Mr. Hult about his prior work history with Mr. Lux. Motion at 8. Plaintiff has already received the information sought from Mr. Hult through Mr. Lux's deposition. See Lux Deposition at 6-7. According to Mr. Lux's deposition, Mr. Hult and Mr. Lux worked together at a company called Group 1 Automotive. Id. at 6. Mr. Lux stated that Mr. Hult left Group 1 Automotive in 2014, two years before Mr. Lux left the company. Id. Mr. Lux indicated that he did not report to Mr. Hult, but that they "indirectly" worked together on projects. Id. at 7. While at Group 1 Automotive, Mr. Lux was the Regional Fixed Operations Director and Mr. Hult was the Chief Operating Officer ("COO"). Id. at 6-7. Therefore, it is unnecessary to require Mr. Hult to be deposed about topics that Plaintiff already directly questioned Mr. Lux.

The sixth and final area Plaintiff wishes to inquire about in a deposition of Mr. Hult is his knowledge "of any other allegations of age discrimination and

retaliation." Motion at 8. As mentioned before, Mr. Hult is the CEO of a Fortune 500 company with almost 8,000 employees. Response at 10; <u>see also</u> Declaration at 1. Mr. Hult's sworn Declaration states that he is responsible for "Asbury's overall strategy and resources," and that "[a]s a general proposition, disputes involving individual non-senior managerial employees are addressed at the store level." Declaration at 1-2. It is highly doubtful Mr. Hult possesses any specific knowledge of non-senior managerial employee disputes.

In sum, the undersigned finds that taking the deposition of Mr. Hult would not produce additional evidence to support Plaintiff's claims, and the request to depose Mr. Hult is due to be denied.

**C.    Attorney's Fees**

Finally, Rule 37 states that "[i]f the motion is granted in part and denied in part, the [C]ourt . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Here, given that the Motion is due to be granted in part and denied in part, the just result is to deny the Motion to the extent that Plaintiff requests reasonable attorney's fees and costs in bringing the Motion.

### III.    Conclusion

Based on the foregoing, it is

**ORDERED**:

1. Plaintiff's Second Motion to Compel Discovery from Defendants and Incorporated Memorandum of Law (Doc. No. 21) is **GRANTED in part** and **DENIED in part**.

2. The Motion is **GRANTED** to the extent that Defendants shall provide full and complete responses to Requests to Produce Nos. 1, 2, and 3 pursuant to this Order. Defendants shall produce this information no later than **May 14, 2021.**

3. The Motion is **DENIED** to the extent that it seeks an Order compelling the deposition of David Hult.

4. The Motion is **DENIED** to the extent that it requests reasonable attorney's fees and costs incurred in filing the Motion.

**DONE AND ORDERED** in Jacksonville, Florida on April 13, 2021.

JAMES R. KLINDT
United States Magistrate Judge

keb
Copies:
Counsel of Record